# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                 )
ELIZABETH ANNOBIL,          )
         Plaintiff,           )
                                 )
vs.                            )      **CIVIL ACTION**
                               )      **NO. 11-40131-TSH**
WORCESTER SKILLED CARE CENTER, INC., )
PATRICIA KENNEDY,   SUSAN M. CASEY, )
DENISE ZUFFANTE, JOEL STEVENS,     )
WINGATE HEALTHCARE, INC.,          )
SENIOR RESDENTIAL CARE/WORCESTER, INC. )
d/b/a NUEROREHABILITATION CENTER AT  )
WORCESTER, and CONTINENTAL ASSET   )
MANAGEMENT, INC.,               )
               Defendants.      )
_____)


## MEMORANDUM OF DECISION
### September 10, 2014

**HILLMAN, D. J.**

### Background

Elizabeth Annobil ("Annobil" or Plaintiff") has filed an Amended Complaint asserting

claims against Worcester Skilled Care Center, Inc. ("WSCC"), Patricia Kennedy ("Kennedy"),

Susan M. Casey ("Casey"), Denise Zuffante ("Zuffante"), Joel Stevens ("Stevens"), Wingate

Healthcare, Inc. ("Wingate"), Senior Residential Care/Worcester, Inc. d/b/a Nuerorehabilitation

Center at Worcester ("Senior Care") and Continental Asset Management, Inc. ("Continental")[1,]

---

[1] On July 24, 2013, the parties filed a stipulation of dismissal pursuant to which Stevens, Casey, Wingate and Continental were dismissed from the case. *See Stipulation of Dismissal* (Docket No. 66). Since Wingate was not a named defendant in the Amended Complaint (it was erroneously named in the original complaint), it is not immediately apparent as to why it was necessary to dismiss it as a party from the case.

alleging claims for: violation of Title VII, 42 U.S.C. § 2000e-2(a)(1), and the Pregnancy Discrimination Act of 1978, 42 U.S.C. §2000e(k) ("PDA")(Count I), violation of the Massachusetts Maternity Leave Act, Mass.Gen.L. ch. 149, §105D ("MMLA") (Count II), violation of the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA") (Count III), violation of 42 U.S.C. §2000e-2(a)(1)(disparate treatment/disparate impact)(Count IV), violation of Mass.Gen. L. ch. 151B, §4 ("Chapter 151B")(Count V), violation of Mass.Gen.L. ch. 93, § 102(a)(Count VI), violation of Mass.Gen.L. ch. 12, §11I and 11H ("MCRA")(Count VII), violation of Mass.Gen.L. ch. 151B and the Americans with Disabilities Act, 42 U.S.C. §10211 ("ADA") (Count VIII), Defamation (Count IX), Wrongful Termination (Count X), violation of 29 U.S.C. §1161(a)("COBRA")(Count XI), and Intentional and Negligent Infliction of Emotional Distress (Count XII)[2].

This Memorandum of Decision and Order addresses the following motions:

1. Defendants' Patricia Kennedy's and Denise Zuffantes's Motion for Summary Judgment (Docket No. 68); and

2. Defendants' Worcester Skilled Care Center, Inc.'s, Wingate Healthcare Inc's and Senior Residential Care/Worcester, Inc's Motion For Summary Judgment (Docket No. 69).

For the reasons set forth below, these motions are *granted*. In her oppositions, Plaintiff seeks additional discovery pursuant to Fed.R.Civ.P. 56(d); that request is *denied*.

---

[2] In filing her Complaint, Annobil has adopted a "kitchen sink" approach that does a disservice to the Court, the opposing parties and her own case in that a tremendous amount of resources and expense have been wasted to ferret out claims that are clearly duplicative and/or unsupported in fact or law. Furthermore, it is unclear to the Court why Annobil has continued to pursue claims against Zuffante (all twelve counts are asserted against her): The undisputed evidence is that Zuffante did not have any role in the investigation of Annobil's alleged misconduct, any role in her termination, or any role in accommodating her alleged handicap. Furthermore, it is undisputed that Zuffante took all necessary actions in connection with notifying the Cobra administrator of Annobil's termination. Simply put, there is not a scintilla or record evidence to support *any* claim against Zuffante.

## **Standard of Review**

Summary Judgment is appropriate where, "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Carroll v. Xerox Corp.*, 294 F.3d 231, 236 (1st Cir. 2002) (citing Fed. R. Civ. P. 56(c)). "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." *Calero-Cerezo v. U.S. Dep't. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004).

When considering a motion for summary judgment, the Court construes the record in the light most favorable to the nonmoving party and makes all reasonable inferences in favor thereof. *Sensing v. Outback Steakhouse of Florida, LLC*, 575 F.3d 145, 153 (1st Cir. 2009). The moving party bears the burden to demonstrate the absence of a genuine issue of material fact within the record. *Id., at* 152. " 'Once the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the nonmoving party must come forward with facts that show a genuine issue for trial.' " *Id.* (citation to quoted case omitted). " '[T]he nonmoving party "may not rest upon mere allegations or denials of the [movant's] pleading, but must set forth specific facts showing that there is a genuine issue of material fact as to each issue upon which [s/he] would bear the ultimate burden of proof at trial." ' " *Id.* (citation to quoted case omitted). The nonmoving party cannot rely on "conclusory allegations" or "improbable inferences." *Id.* (citation to quoted case omitted). " 'The test is whether, as to each essential element, there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." ' " *Id.* (citation to quoted case omitted).

## Plaintiff's Request For Additional Discovery

In her opposition, Plaintiff requests that the Court defer ruling on Defendants' motions pursuant to Fed.R.Civ.P. 56(d) until she has had an opportunity to conduct further discovery. In support of her request, Plaintiff alleges that Defendants failed to adequately respond to her requests for discovery. Essentially, the Plaintiff is asking the Court to extend the deadline for fact discovery. Generally, a party seeking to extend discovery deadlines:

> must show good cause for the desired extension. But where, as here, the litigant is faced with an expired deadline, more is required: she must show that her failure to request an extension in a [timely] manner constitutes excusable neglect.
>
> In federal civil procedure, 'excusable neglect' is a term of art. It encompasses 'inadvertence, mistake, or carelessness, as well as ... intervening circumstances beyond the party's control.' Determining the existence vel non of excusable neglect is an equitable exercise that takes into account the totality of the circumstances. Even so, a lawyer's 'inattention or carelessness,' without more, 'normally does not constitute "excusable neglect."'

*Rivera-Almodovar v. Instituto Socioeconomico Comunitario, Inc.,* 730 F.3d 23, 26-27 (1st Cir. 2013)(internal citations and citations to quoted cases omitted). Additionally, Fed.R.Civ.P. 56(d)[3] cannot be invoked to avoid a party's obligation to comply with its discovery obligations:

> the rule 'is not designed to give relief to those who sleep upon their rights.' It follows that 'a party seeking to derive the benefit of [this rule] must demonstrate due diligence both in conducting discovery before the emergence of the summary judgment motion and in pursuing an extension of time once the motion has surfaced.

*Rivera-Almodovar,* 730 F.3d at 29 (internal citation and citation to quoted case omitted).

A party seeking to invoke Rule 56(d) must, "by affidavit or in some other authoritative manner: (i) explain[] his or her current inability to adduce the facts essential to filing an opposition, (ii) provide[] a plausible basis for believing that the sought-after facts can be

---

[3] The rule provides that: "[i]f a nonmovant shows by *affidavit or declaration that*, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed.R.Civ.P. 56(d)(emphasis added).

assembled within a reasonable time, and (iii) indicate how those facts would influence the outcome of the summary judgment motion." *Id.*, at 29 (citation to quoted case omitted). Generally, Rule 56(d) motions for continuances are liberally granted where such prerequisites are satisfied. *Pina v. Children's Place,* 740 F.3d 785, 794 (1st Cir. 2014).

Plaintiff has not submitted an affidavit or declaration in support of her request—she simply includes her request in her unsworn opposition to Defendants' summary judgment motions, which is arguably insufficient to meet the requirements of Rule 56(d). *See CareToLive v. Food and Drug Admin.*, 631 F.3d 336, 344-45 (6th Cir. 2011). Nevertheless, I will address the merits of her request. Plaintiff asserts that she has established the she was unable to complete discovery during the deadlines imposed by the Court and good cause exists for her not having previously obtained the documents she now seeks. More specifically, she asserts that she served her original discovery requests on the Defendants in 2009 and 2011 and amended requests were answered incompletely by the Defendants in August 2013. *See Pl's Mem.Of L. Opp. To Defs' Wingate Healthcare Inc., Senior Residential Care/Worcester, Inc. And Worcester Skilled Care Inc's Mot. For Sum. J.* (Docket No. 76)("*Pl's First Opp.*"), at pp. 3-4, and *Pl's Mem.Of L. Opp. To Defs' Patricia Kennedy And Denise Zuaffante's Mot. For Sum. J.* (Docket No. 78)("*Pl's Second Opp.*"), at pp. 3-4. Plaintiff contends that the discovery produced in August, although containing some information, was incomplete and it was apparent that there was information missing that was subject to discovery. Among the twenty three requests sought by Plaintiff are the following materials: (1) Wingate, Senior Care's and WSCC's employee handbooks; (2) Wingate's code of conduct; (3) Staffing records, social worker records, payroll records, fax records, risk management records, COBRA notices, *etc.*; (4) records of the employee responsible for handling

accommodation requests, and (5) Kennedy's typed notes of meetings and conversations regarding the incident and post-termination proceedings. *Pl's First Opp.*, at p. 4; *Pl's Second Opp.*, at p. 4.

Plaintiff does not specify how the requested discovery would be germane to opposing Defendants' motions, does not provide any estimate as to how long it would take to complete the requested discovery, nor indicate how the facts to be adduced from the additional discovery would influence the outcome of the pending motions. Therefore, she has failed to meet her burden to establish that additional discovery under Rule 56(d) is warranted.  *See Pina*, 740 F.3d at 795 (Rule 56(d) motion that merely speculates that something might be discovered but provides no realistic basis for believing that further discovery).   At the same time, even without adequate explanation from the Plaintiff, the Court cannot ignore the obvious— at least some of the information sought would necessarily be relevant to the issues raised by the Defendants' motions. However, such a conclusion begs the question, why did the Plaintiff wait until after the Defendants filed their motions to essentially seek to re-open discovery?

The original deadline for the completion of fact discovery, other than expert discovery, was October 31, 2012. *See Scheduling Order* (Docket No. 21).   After multiple requests to extend the deadline for completing discovery, the Court ordered that all fact discovery be completed by June 14, 2013 and that dispositive motions be filed by August 30, 2013. *See electronic docket entry at* Docket No. 47.   A status conference was held on June 14, 2013.   At that conference, the Court ordered the Plaintiff to serve discovery requests on Senior Care within 10 days and for that Defendant to respond within 20 days.   The parties then informed the Court that fact discovery was complete with the exception of the additional discovery to be sought from Senior Care. *See electronic docket entry,* Docket No. 60.

On July 19, 2013, the Court extended the deadline for filing dispositive motions until September 30, 2013. *See electronic docket entry*, Docket No. 64.   The fact discovery deadline expired by the middle of July, at the latest and Plaintiff represents that she received Defendants' final discovery responses in August 2013.   Plaintiff did not file a request to further extend the fact discovery deadline, nor did she file a motion to compel Defendants to comply with previously served discovery requests prior to Defendants filing their motions for summary judgment on September 23, 2013.   Under these circumstances, Plaintiff has failed to establish that she exercised due diligence to obtain the specified discovery from the Defendants before the fact discovery deadline expired.   Put another way, Plaintiff has failed to show good cause for not obtaining the requested material/information during the discovery period.   Therefore, Plaintiff's request for further discovery pursuant to Rule 56(d) is denied. [4]  *Accord Pina*, 740 F.3d at 794 (Rule 56(d) "is designed to minister to the vigilant, not to those who slumber upon perceptible rights)(quoting *Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 45 (1st Cir. 1998)).

## **Facts**[5]

Before setting forth my findings of fact, I find it necessary to highlight a troubling problem with Plaintiff's submissions. Often, the record evidence she cites as support for her factual

---

[4]  Defendants represent that a substantial amount of the information/material requested by Plaintiff has already been provided (*e.g.* employee handbook and written job descriptions) , that some of the materials/information sought was never previously requested during discovery and that it filed written objections to discovery requests regarding some of the information now sought by Plaintiff—objections which at the time were not challenged by Plaintiff by way of a motion to compel or otherwise. Having reviewed the parties' submissions and listened to their arguments, at the hearing on the instant motions and at previous proceedings, I credit Defendants' representations.

[5]  Plaintiff's statements of fact are somewhat rambling and disorganized. *See Pl's Concise Statement of Facts And Opp. To Defs' Wingate Healthcare, Inc. Senior Residential Care/Worcester, Inc. and, Worcester Skilled Care, Inc.'s Concise Statement of Facts Under L.R. Rule 56.1* (Docket No. 77)(*"Pl's First Statement of Facts"*) and   *Pl's Concise Statement of Facts In Opp. To Defs Patricia Kennedy and Denise Zuffante's Concise Statement of Facts Under L.R. Rule 56.1* (Docket No. 79)(*"Pl's Second Statement of Facts"*).   Nevertheless, the Court has attempted to comb through them to ascertain those facts which are genuinely in dispute. I will note that throughout her submissions, Annobil refers to the alleged abused resident as "RL." In fact, RL was the individual who reported seeing an aide abuse a resident; the alleged abused resident was "JL."

assertions simply does not support the "interpretation" she gives them. For example, Annobil states that a certified nursing assistant ("CNA") testified that she helped Annobil transfer JL to the dining room on July 5, 2008 and saw Annobil feed JL. *See Pl's Second Statement of Facts*, at p. 11, ¶11. As support for this fact, Annobil cites to *Exhibit VV* attached to *Pl's Second Opp*. However, the only statement made by the CNA is that she never saw anyone abuse JL; she does not say that she helped Annobil transfer JL to the dining room on July 5, 2008 or that she saw her feed JL lunch that day. This is a material misstatement of a critical fact and extremely troubling. The Court will not attempt to cite every instance that Plaintiff cited to record evidence that does not support her factual assertions, but will point out other egregious examples when appropriate to the discussion. Frankly, the Court is extremely disturbed by the extent to which Plaintiff has misstated the facts in her opposition and cited to materials that do not support her assertions.

*Annobil's Termination*

Annobil was employed as a CNA at Senior Care[6] from March 23, 2003 until July 11, 2008. Her usual shift was from 7 am to 3 pm and she worked every other weekend. During the relevant time period, Annobil was assigned to care for a resident who will be referred to as J.L. J.L. was fed her meals in her room and in the dining room. On July 7, 2008, an individual reported that on July 5th, while visiting her daughter, she had witnessed an aide slap J.L. twice on the arm while feeding her; the individual observed the alleged assault from her daughter's room which was located across the hall from J.L.'s room. The individual made the report to Casey, who was Annobil's supervisor on the day of the alleged incident. Annobil worked on July 6 and July 7, 2008; on July

---

[6] The Defendants note that Annobil's employer has undergone multiple name changes over the years and the facility at which she worked has been referred to several different ways. For ease of convenience, I will simply refer to Annobil's employer as "Senior Care."

7, 2008, she was suspended while the matter was investigated. On July 8, 2008, the individual repeated the allegation to Kennedy during a telephone interview.

On July 7, 2008, Annobil was interviewed by Kennedy. Annobil told Kennedy that another employee had fed J.L. that day. Annobil was then suspended pending a more complete investigation. The "Accountability Sheet" for July 5, 2008 shows that Annobil was assigned to the second floor for the 7 am to 3 pm shift on July 5, 2008 and that she was responsible for the care of J.L. According to Senior Care's records, J.L. was frequently fed in her room on Saturdays and Sundays. Furthermore, a senior CNA would later report that pursuant to the alleged victim's care plan, she was frequently fed in her room on Saturdays and Sundays. July 5, 2008 was a Saturday.

On July 11, 2008, Annobil spoke with Kennedy and told her that she had fed J.L. that day, but said she did so in the dining room. After investigating and consulting with Elissa O'Brien of the human resources department at Wingate, Kennedy decided to terminate Annobil. Annobil was terminated on July 11, 2008. The stated reasons for the termination was misconduct— "mistreatment of resident." At the time that she fired her, Kennedy did not know that Annobil was pregnant.[7]

Zuffante had not role in the investigation, the decision to terminate or Annobil's actual termination. On July 15, 2008, Zuffante notified Senior Care's COBRA administrator, Cornerstone, that Annobil had been terminated. Cornerstone sent Annobil a COBRA package in compliance with the necessary regulations. A copy of that packet with a cover letter dated July

---

[7] The issue of whether Kennedy was aware that Annobil was pregnant when she terminated her is first raised in Annobil's statements of material fact: Annobil states that Kennedy testified in her deposition that she (Kennedy) was not aware that Annobil was pregnant when she terminated her. Annobil then attempts to dispute the fact by pointing to her own deposition testimony that Kennedy asked her if she were pregnant again—however, Annobil never identifies when the question was asked, nor does she indicate what her response was to the question. None of the materials that Annobil cites to disputes Kennedy's testimony that *on July 11, 2008*, she did not know of the pregnancy and for that reason, I find that there is no genuine issue of material fact that Kennedy did not know Annobil was pregnant when she terminated her.

18, 2008, addressed to Annobil at her residence was produced by the Defendants. Shortly thereafter, Annobil filed a claim with the Massachusetts Department of Unemployment Assistance ("DUA") for unemployment benefits. The DUA found there to be insufficient evidence to deny benefits on the basis that Annobil had knowingly violated a company policy.

Kennedy allegedly reported the incident of abuse via fax to the Department of Public Health ("DPH") on July 8, 2008-- Massachusetts regulations require that such allegation be reported. However, the DPH never received the report and later cited Defendants for failing to report the alleged incident, as required. After a second report was received in May 2009, the DPH conducted an investigation and found that there was not enough evidence to determine the validity of the report.

On May 1, 2009, Annobil filed a complaint with the MCAD, alleging that Senior Care discriminated against her because she was disabled—her disability being that she was pregnant. The MCAD conducted an investigation and found that the termination was not due to discrimination, but instead based on a report of abuse. More specifically, the MCAD found it to be undisputed that a credible report of abuse was made and that Annobil was terminated as a result of that credible report. The MCAD further found that regardless of whether Annobil had in fact abused the patient, it constituted a non-discriminatory reason for termination of her employment. The decision was affirmed on appeal.

### Annobil's Employment History With Senior Care

Annobil was an at will employee. During her employment with Senior Care, Annobil had worked without any major incidents (excluding the alleged incident described above). She had taken two separate medical leaves to give birth to her children. With respect to the second leave, Annobil gave birth prematurely—before having the opportunity to request FMLA leave. That

leave was granted retroactively.   Following each leave, Annobil returned to work without incident.   In April of 2007, Annobil requested a reduction of hours which was granted.

In or around June of 2008, Annobil became aware that she was pregnant.   Annobil informed informed her immediate supervisor, Casey, of her pregnancy on or prior to July 5, 2008. Annobil had a troubled pregnancy and was very sick and weak.   Annobil had requested accommodations in connection with her prior pregnancies, but had not requested any accommodations with respect to this more recent pregnancy.   Additionally, at the time she was terminated, Annobil had not, as of yet, requested FMLA leave or voiced any intent to take FMLA or MMLA when it came time to give birth. Furthermore, she was not suffering from any medical conditions which would have required to her to take a leave of absence in July 2008.[8]   Annobil delivered her child in November of 2008.

## Discussion

### Plaintiff's Claims for Violation of Federal and State Pregnancy Discrimination Laws-- Title VII and Chapter 151B (Counts I and V)

Under Title VII and the PDA, an employer may not discriminate against an individual on the basis of pregnancy "with respect to [such individual's] compensation, terms, conditions, or privileges of employment … ." Accordingly, " '[i]t is settled under Title VII that an employer may

---

[8]   In her statement of material facts relating to Kennedy's and Zuffante's motion, Annobil contends that contrary to their assertion "plaintiff did broach the issue of her pregnancy and her pregnancy related serious medical condition with her supervisor and HR, and identified approximate leave dates for September-October 2008, and requested accommodation in the form of light duty, reduced hours and/or more frequent breaks, and identified and invoked her eligibility under the FMLA and MMLA."   *Pl's Second Statement of Facts*, at p. 19,   ¶35. In her statement of facts relating to the corporate Defendants' motion, Annobil contends that she told her supervisors that she was expecting to take FMLA or maternity leave between July 5, 2008 and October 2008 and that she informed them of her severe medical condition and sought accommodations. *See Pl's First Statement of Facts*, at p. 17, ¶ 29. However, the record evidence cited by Annobil does not support her factual assertions.   While she did testify that she was experiencing nausea, headaches and dizziness which she reported to Casey and for which on one occasion she requested light duty, she did not testify that she required any form of leave in July 2008—on the contrary, she expressly testified that there was no reason for her to go out on leave for medical reasons in early July 2008 and that she did not know when she was going to have the baby, so she did not raise the issue of taking maternity leave. Furthermore, she never made any formal request for accommodation. *See Pl's First Opp.*, and *Pl's Second Opp.*, *Ex. E,* at pp. 26,27, 73-74.   For these reasons, the Court accepts Defendants' asserted facts as true.

not discharge an employee based on the categorical fact of her pregnancy.' A pregnant employee may be discharged however, if the employer 'does so for legitimate reasons unrelated to her pregnancy.' " *Martinez-Burgos v. Guayama Corp.*, 656 F.3d 7, 12 (1st Cir. 2011)(internal citation and citation to quoted case omitted).   Massachusetts law, more specifically Chapter 151B, prohibits an employer from discriminating against individuals based on gender, including because of pregnancy.

*Annobil's Title VII and Chapter 151B Claims Against Senior Care and Her Chapter 151 B Claims against Senior Care and the Individual Defendants*

In this case, there is no direct evidence of discrimination and therefore, the Court applies the burden shifting analysis set forth in *McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973).   Annobil has the initial burden of establishing her prima facie case. *See Martinez-Burgos*, 656 F.3d at 12.   In order to do so, she must establish the following by a preponderance of the evidence: (1) she was pregnant; (2) her job performance was satisfactory; (3) she was nonetheless terminated; and (4) a comparably qualified person continued to perform her job.   *Fiske v. MeYou Health, Inc.*, Civ.Act. No. 13-10478-DJC, 2014 WL 2818588 (D.Mass. Jun. 20, 2014).   If Annobil makes out her prima facie case, then a rebuttable presumption arises that Senior Care discriminated against her. The burden then shifts to Senior Care to produce evidence to rebut the presumption by showing that Annobil was terminated "for a legitimate nondiscriminatory reason." *St. Mary's Honor Ctr. V. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742 (1993).   If Senior Care "produces such evidence, the *McDonnell Douglas* framework 'disappear[s]' and the sole remaining issue is 'discrimination *vel non.*'. The ultimate burden of persuasion always remains on [Annobil], who must be afforded an opportunity to show that the reasons offered by the defendant were a pretext for discrimination." *Cham v. Station Operators,*

*Inc.*, 685 F.3d 87, 94 (1st Cir. 2012)(internal citations and citation to quoted case omitted). Claims brought under Chapter 151B are reviewed under the *McDonnell Douglas* burden-shifting framework utilized in Title VII cases. *Windross v. Barton Protective Servs., Inc.*, 586 F.3d 98, 103 (1st Cir. 2009).

For purposes of this discussion, I have assumed that Annobil has established her prima facie case: (1) she was pregnant; (2) she was terminated; (3) her job performance was satisfactory; and (4) she was replaced. Senior Care has produced evidence to establish that Annobil was terminated after the relative of another resident reported having seen Annobil slap J.L. while feeding her. Before terminating Annobil, Senior Care, more particularly Kennedy, undertook an investigation of the alleged incident. When Annobil first spoke with Kennedy, she said that she had not fed J.L. that day. She later changed her story and said that she fed J.L. that day in the dining room. Based on her investigation, Kennedy determined that Annobil had lied about the incident and she determined that the report that Annobil had abused JL was credible. She consulted with the Wingate human resources department and then fired Annobil. Thus, Defendants have established a legitimate reason for Annobil's termination, *i.e.,* a credible report of patient abuse.

Annobil contends that Kennedy's investigation was cursory, that the evidence against her was weak, unsubstantiated and should be disregarded, and that she did not abuse J.L. She argues that given the foregoing, Senior Care's reason for terminating her was clearly pretextual. I disagree. While it is true that there is conflicting evidence as to whether Annobil slapped J.L., that does not mean that her termination was unwarranted. *See Ronda-Perez v. Banco Bilbao Vizcaya Argentaria--Puerto Rico,* 404 F.3d 42, 47 (1st Cir. 2005)(in referring to "step-by-step" criticism of employer investigation court observed that "Title VII ... does not ensure against inaccuracy by an employer, only against … discrimination"). Kennedy 's investigation revealed

13

that an eyewitness reported that J.L. had been slapped by a CNA; Annobil was assigned to J.L. on the day of the alleged incident; and Annobil initially lied to Kennedy about the fact that she was assigned to J.L. that day. Furthermore, Kennedy, the ultimate decisions maker, did not know that Annobil was pregnant at the time of her termination. Under the circumstances, I find as a matter of law that Annobil has not established that she her pregnancy was more likely the motivating factor behind her termination, that is, that her termination was motivated by discrimination rather than legitimate business reasons. *Accord Bennett v. Saint–Gobain Corp.,* 507 F.3d 23, 31 (1st Cir. 2007) (in absence of other proof that decisionmaker harbored discriminatory animus, it is not enough that employer's perception may have been incorrect; plaintiff must show that decisionmaker did not believe in accuracy of reason given." )*; Azimi v. Jordan's Meats, Inc.,* 456 F.3d 228, 246 (1st Cir. 2006)(in assessing pretext, court focuses on perception of decisionmaker, *i.e.*, that is, whether employer believed its stated reason to be credible; it is not enough for plaintiff to simply impugn veracity of employer's justification-- plaintiff must point to specific facts which would enable factfinder to find that reason given is not only sham, but sham intended to cover up employer's real and unlawful discriminatory motive). Therefore, Senior Care is entitled to summary judgment on this claim.

*Annobil's Title VII and Chapter 151B Claims Against The Individual Defendants*

As to Kennedy and Zuffante, there is no individual liability under Title VII. *See Fantini v. Salem State College*, 557 F.3d 22, 30 (1st Cir. 2009). Therefore, summary judgment is granted with respect to Annobil's PDA claims against Kennedy and Zuffante. Unlike its federal counterpart, Chapter 151B does allow for individual liability. Thus, Kennedy and Zuffante "may be held liable if: (1) they had the authority or the duty to act on behalf of the employer; (2) their action or failure to act implicated rights under the statute; and (3) there is evidence articulated by

the complainant that the action or failure to act was in deliberate disregard of the complainant's protected rights allowing the inference to be drawn that there was intent to discriminate or interfere with the complainant's exercise of his rights." *Furtado v. Standard Parking Corp.*, 820 F. Supp.2d 261, 278 (D.Mass. 2011).

Kennedy clearly had the authority to terminate Annobil.   However, Kennedy was not aware that Annobil was pregnant at the time she terminated her.   Zuffante on the other hand, was aware of Annobil's pregnancy.   However, even if I assume that she had the authority to terminate Annobil (which is unclear), she did not participate in the decision to terminate—she only became involved after Annobil had already been terminated.   Therefore, Annobil has failed to establish that either of the individual Defendants "acted in deliberate disregard of [her] rights" under Chapter 151B and therefore, their motion for summary judgment on this claim is allowed. *See Id.* at 279.

### *Plaintiff's Claims For Violation of the MMLA and FMLA (Counts II &III)*

Before addressing these claims, I want to reiterate that I find the record is undisputed that at the time she was terminated, Annobil had not requested leave under either the MMLA or FMLA with regard to her pregnancy.   Annobil's assertions to the contrary are unsupported.

The FMLA provides that an eligible employee may take, for medical reasons, reasonable leave up to a maximum of twelve weeks, and then to return to the same or an alternative position with some equivalency. The FMLA also prohibits an employer from retaliating against an employee who exercised his or her statutory rights. *See* 29 U.S.C. § 2615(a). "Thus, an employer cannot regard the taking of FMLA leave as a negative factor in deciding to terminate an employee. But, although an employee who properly takes FMLA leave cannot be discharged for exercising a right provided by the statute, she nevertheless can be discharged for independent reasons."   *Henry*

*v. United Bank*, 686 F.3d 50, 55 (1st Cir. 2012)(internal citations omitted). Interference claims under the FMLA are distinguishable from FMLA discrimination or retaliation claims. An interference claim involves the denial of substantive rights that the FMLA provides for employees, while discrimination and retaliation claims involve violations of FMLA provisions that prohibit specify conduct by employers. *See Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159-60 (1st Cir. 1998). As to interference claims, "[t]he issue is simply whether the employer provided its employee the entitlements set forth in the FMLA." *Id.* at 159. Such claims include the denial of substantive rights, as well as other actions by an employer that prevent or even "deter" employees from exercising their rights. *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006).

Similarly, the MMLA makes it unlawful "[f]or an employer ... to refuse to restore certain female employees to employment following their absence by reason of a maternity leave taken in accordance with [the MMLA] ... or to impose any other penalty as a result of a maternity leave of absence ." Mass. Gen. Laws ch. 151B, § 4(11A). The MMLA further provides that a female employee returning from maternity leave "shall be restored to her previous, or a similar, position with the same status, pay, length of service credit and seniority, wherever applicable, as of the date of her leave." *Id.* at ch. 149, § 105D. The Supreme Judicial Court of Massachusetts has applied the federal courts' interpretation of issues under the FMLA when deciding issues related to the MMLA. *Fiske v. MeYou Health, Inc.,* CIV.A. 13-10478-DJC, 2014 WL 2818588 (D.Mass. June 20, 2014).

It is unclear whether Annobil is asserting that Defendants interfered with her rights under the FMLA or retaliated against her for exercising FMLA rights. She alleges that she was terminated because Senior Care *anticipated* that at some point she would be seeking to take FMLA leave because she had taken leave with her prior pregnancies. Annobil's problems under either

theory are myriad. First, Kennedy, the decision maker, was not aware she was pregnant and would require future leave. Second, Annobil herself has made clear that at the time she was terminated, she was not suffering from any health related issues that would require her to take leave and there is no genuine issue of material fact that she had not requested FMLA leave or informed anyone at Senior Care that she would be taking future leave. As to her prior leaves under the FMLA, she took leave in 2005 and again in 2007 (returning August 28, 2007); both times she returned to her original position and her last leave ended nearly a year before her termination. Finally, Defendants have asserted a legitimate reason for terminating Annobil independent of her eligibility for FMLA leave. Simply put, Annobil has not alleged any facts which would support a finding that any Defendant denied her any rights which she was due under the or retaliated against her for taking prior leave under the FMLA. Her MMLA claims fail for the same reasons. Therefore, Defendants are entitled to summary judgment on these claims.

### *Annobil's Title VII Disparate Impact/Disparate Treatment Claim (Count IV)*

Annobil asserts that she was subjected to disparate treatment and disparate impact in violation of 41 U.S.C. § 2000e-2(a)(1). Defendants contended in their motion that Annobil had not asserted any facts in her Amended Complaint which would support such a claim. I agree that Annobil did not assert any facts in statement of material facts to support this claim. Instead, she attempts to assert facts in her opposition memorandum—which is not appropriate. More importantly, the materials she cites to in her opposition do not support such a claim.[9] In any event,

---

[9] In her oppositions, Annobil claims that non-pregnant female employees accused of abuse under these circumstances are not terminated after fair investigation. *Pl's First Opp.*, at p. 14; *Pl's Second Opp.*, at p. 14. She cites to her own deposition to support this statement. However, while Defendants' attorney points out to Annobil at her deposition that she has made the aforementioned allegation, Annobil testifies *that she does not know of any other employee that struck a resident and was not terminated*. *Pl's First Opp.* and *Pl's Second Opp.*, *Ex. E,* at p. 81.

I have determined that Senior Care had a legitimate, non-discriminatory reason for terminating her. For these reasons, summary judgment shall enter for the corporate Defendants on this claim.

### *Annobil's Claim For Violation Of The Massachusetts Equal Rights Act (Count VI)*

In her opposition, Annobil does not cite to any facts, or provide any legal argument to support her claim that Defendants violated the Massachusetts Equal Rights Act. Instead, the sum total of her argument is that "[c]ontrary to defendants assertion, plaintiff has set forth facts to create a genuine issue of material fact whether she was subject to unlawful discrimination and if plaintiff were not to prevail on her claim under M.G.L.A., c. 151B, she *may* have a claim under M.G.L.A., c. 93 §102, as set forth in Count VI of her amended complaint." *Pl's Opp.*, at p. 17 (emphasis added). Accordingly, I find that the claim is waived. *See Fryer v. A.S.A.P. Fire & Safety Corp.,* 758 F. Supp. 2d 29, 34 (D. Mass. 2010) *aff'd,* 658 F.3d 85 (1st Cir. 2011)(district court may treat as waived issues which are not adequately briefed by parties); *State Police for Automatic Ret. Ass'n v. Difava,* 164 F. Supp. 2d 141, 157 (D.Mass. 2001) *aff'd,* 317 F.3d 6 (1st Cir. 2003)(issues not briefed by plaintiffs are deemed waived).

### *Annobil's Claims For Violation of the Massachusetts Civil Rights Act (Count VII)*

Annobil asserts that her termination violated the MCRA. In order to prove her claim, she must establish that her exercise or enjoyment of rights secured by the constitution or laws of either the United States or Massachusetts has been interfered with, or attempted to be interfered with, by threats, intimidation or coercion. *See* Mass. Gen. L. ch. 12, § 11I. "A 'threat' means the 'intentional exertion of pressure to make another fearful or apprehensive of injury or harm.' " *Goddard v. Kelley,* 629 F.Supp.2d 115, 128 (D.Mass. 2009)(citation to quoted case omitted). "Intimidation" means putting a person in fear for the purpose of compelling or deterring his or her conduct. *Id.* "Coercion" means application of physical or moral force to another to constrain him to do against his will something he

would not otherwise do. *Id.* In support of her claim, Annobil alleges that Defendants gave false reasons for not believing her continuous denial of the allegations against her, and that they did not produce any witness or evidence to refute her belated contention that she fed JL in the dining room on July 5, 2008, and therefore, could not have struck her in her room as alleged. Annobil asserts that Defendants failure to properly investigate her alleged assault of JL amounts to threats, intimidation and coercion because of the potential criminal charges being levied against her and because the "Nursing Board in Boston" would be immediately contacting her about why she was terminated. *See Pl's First Opp.*, at p. 18; *Pl's Second Opp.*, at p. 18. Annobil has not alleged that the Defendants threatened her with criminal charges or with reporting her to the Massachusetts Board of Registration in Nursing. Furthermore, she has not provided any explanation as to how Defendants alleged failure to properly investigate the incident was done for the purpose of coercing, or pressuring her to do something.

Assuming for purposes of this discussion that Annobil was wrongfully terminated (I have found she was not), she has not asserted *any* facts which would support a finding that any Defendant's "actions, considered individually or together, constituted 'threats, intimidation or coercion' within the meaning of the MCRA." *Meuser v. Fed. Express Corp.*, 564 F.3d 507, 519 (1st Cir. 2009). More specifically, she has not pointed to any incidents that would rise to the level of a threat, *i.e.,* "'intentional exertion[s] of pressure [that would] make another fearful or apprehensive of injury or harm,'" nor has she pointed to any incidents that would constitute intimidation, *i.e.,* " 'putting in fear for the purpose of compelling or deterring conduct,' or coercion[*i.e.,*] 'such force, either physical or moral, as to constrain [her] to do against [her] will something [she] would not otherwise have done.'" *Id.* In summary, " 'the record is entirely devoid of anything resembling the sort of physical, moral, or economic pressure that courts have found sufficient to support a claim under this statute ... [especially when] ... the exception for claims based on non-physical coercion remains a narrow one. '"*Id.*, at 519

(citation to quoted case omitted).   Therefore, Defendants are entitled to summary judgment on Annobil's MCRA claim.

*Annobil's Handicap Discrimination and Failure To Accommodate Under Chapter 151B and the ADA (Count VIII)*[10]

Annobil has asserted claims for handicap discrimination and failure to accommodate under the ADA and Chapter 151B.   Under the ADA, an employer is prohibited from discriminating against a "qualified individual" with a disability with respect to terms, conditions and privileges of employment. 42 U.S.C. §12112(a).   Discrimination can result where the employer fails to make a "reasonable accommodation" to the known physical or mental limitations of an otherwise qualified individual with a disability- that is where an employer fails to provide reasonable accommodations which would permit the employee to do her job .   42 U.S.C. §12112(b)(5)(A); *Tobin v. Liberty Mutual Ins. Co.*, 553 F.3d 121, 125 (1st Cir. 2009).   The employer is not required to make accommodations which would create an "undue hardship."   The elements for a disability discrimination claim under Chapter 151B are identical.   *Miller v. Verizon Communications, Inc.*, 474 F.Supp.2d 187,194.[11]

A plaintiff may prove she was discriminated against because of her disability based on direct or indirect evidence. Where the employee does not have direct evidence of discrimination, the *McDonnell Douglas* framework applies. In order to make out a *prima facie* of discrimination, the plaintiff must establish: "(1) that she was 'disabled' within the meaning of the ADA;   (2) that [she was an otherwise qualified individual for her job, that is,] she was able to perform the

---

[10]   Like Title VII, individual liability does not exist under the ADA. *See Roman-Oliveras v. Puerto Rico Elec. Power Auth., 655 F.3d 43, 51 (1st Cir. 2011).*   Therefore, summary judgment shall enter for Kennedy and Zuffante on Annobil's ADA claim.   As discussed above, Chapter 151 B does not bar claims against individuals.

[11]   Chapter 151B is the Massachusetts analogue to the ADA and the Supreme Judicial Court of Massachusetts has indicated that courts should look to federal case law construing the ADA when construing disability claims under Chapter 151B.   *Sensing*, 575 F.3d at 153-54.

essential functions of her job with or without accommodation; and (3) that she was discharged or adversely affected, in whole or in part, because of her disability." *Rivera v. Pfizer Pharmaceuticals, LLC,* 521 F.3d 76, 82 (1st Cir. 2008). With respect to a claim based on the employer's failure to provide reasonable accommodation, the third prong of the prima facie case can be satisfied by a showing that the employer "despite knowing of [the employee's] alleged disability, did not reasonably accommodate it." *Sensing v. Outback Steakhouse of Florida, LLC,* 575 F.3d 145, 157 (1st Cir. 2009)(citation to quoted case omitted).

If the plaintiff establishes her *prima facie* case, the employer must articulate a legitimate non-discriminatory reason for its actions. If the employer does so, the burden then shifts back to the plaintiff to establish that the reasons offered by the employer were not the true reason for its actions, but were a pretext for discrimination. *Sensing,* 575 F.3d at 155. As to Annobil's claim that she was terminated based on a disability (being pregnant), I have previously found that the Defendants have asserted a legitimate non-discriminatory reason for terminating her and therefore, they are entitled to summary judgment with respect to her disability discrimination claims under the ADA and Chapter 151B. Nonetheless, for the sake of completeness, I will examine whether Annobil has made out a prima facie case of handicap discrimination.

To qualify as a disabled person under the ADA, the plaintiff must establish that she has "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) [is] regarded as having such an impairment" *Toyota Motors Manufacturing Kentucky, Inc. v. Williams,* 534 U.S. 184, 193, 122 S.Ct. 681 (2001); 42 U.S.C. §12102(2). Being pregnant, in and of itself, is not a handicap. However, complications related to pregnancy can constitute a handicap. *" The relevant issue is the nature of the purported disability, 'regardless of its origin.' " See Gauthier v. Sunhealth Specialty*

21

*Servs., Inc.*, 555 F. Supp.2d 227, 239 (D.Mass. 2008) and cases cited therein. In her oppositions to the motions, Annobil talks about Defendants' failure to accommodate "her pregnancy related disability," and states that she had disclosed her pregnancy related complications to Defendants, but she never *identifies* any pregnancy related *complication* which would constitute an impairment that substantially limits one or more major life activity. According to her deposition testimony, she suffered from headaches, nausea and vomiting, which she reported to her supervisor, Casey. However, she provides no legal argument as to whether such symptoms differ from normal symptoms of pregnancy and how these complications are disabling.[12] Therefore, she has failed to establish the first prong of her prima facie case, *i.e.*, that she was disabled.

As to her failure to accommodate claims, Annobil states that Kennedy and Casey had provided her with accommodations with respect to her prior pregnancies-- presumably she is suggesting that she should have been offered those same accommodations with respect to her 2008 pregnancy. However, Annobil never identifies the accommodations she was given in 2005 and 2007, nor has she identified *any* accommodations which she sought with respect to her 2008 pregnancy. At most, she states that one day she requested light duty and was told by Casey they were short staffed and had no light duty; Casey told her if she did not feel well, she should go home. Other than this one time denial of her request to perform light duty, she does not identify any other instances when the Defendants denied her request for accommodation. Therefore, she has failed to establish both the first and third prongs of her failure to accommodate claim.

---

[12]  In her material statement of facts, Annobil states that she suffered from severe preeclampsia. While there is evidence that she did suffer from preeclampsia in her prior pregnancies, there is simply no evidence that she was suffering from it during her 2008 pregnancy. In any event, she does not provide any details as to what preeclampsia is, nor does she provide any argument as to why this medical condition is the type of pregnancy complication which would constitute a handicap.

Summary Judgment shall enter for the Defendants on her disability discrimination and failure to accommodate claims[13].

### *Annobil's Defamation Claim (Count IX)*

The Court need spend little time on this claim. The Defendants' memorandums comprehensively address the deficiencies in Annobil's defamation claims. For the reasons stated by the Defendants, they are entitled to summary judgment with respect to Annobil's defamation claims.

### *Annobil's Wrongful Termination Claim (Count X)*

Annobil contends that her termination breached her employment contract with Senior Care and/or violated public policy. However, in her oppositions to the motions for summary judgment, she does not point to any facts which would establish that she had a contractual relationship with Senior Care. Moreover, her legal argument in support of this claim addresses only the public policy claim, and appears to concede that she was an employee at will. Therefore, to the extent that Annobil asserts a claim that she was wrongfully terminated in violation of her employment contract, it is waived. Essentially, Annobil asserts that her termination was in violation of public policy because it violated her rights under the federal and Massachusetts law—in particular, it violated her civil rights, her rights under the PDA, MMLA and ADA, her rights under Chapter 151B and COBRA.

"[U]nder Massachusetts common law, 'Redress is available for employees who are terminated for asserting a legally guaranteed right (e.g., filing workers' compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do that which the law

---

[13] Frankly, the Court is unclear as to the exact nature of Annobil's legal arguments concerning these claims. As noted, in her oppositions, she does not specify the nature of her disability and does not identify any accommodations which she requested. A good portion of her arguments regarding Count VIII is devoted to issues which have nothing to do with her failure to accommodate or handicap discrimination claims.

forbids (e.g., committing perjury).' For example, 'a cause of action will lie when an employee is fired ... for enforcing safety regulations for which she was responsible.' … The cause of action for wrongful termination in violation of public policy does not apply where 'there is a comprehensive remedial statute, [and] the creation of a new common law action based on the public policy expressed in that statute would interfere with that remedial scheme.' It makes no difference whether the remedial scheme is created by state or federal law." *Perez v. Greater New Bedford Vocational Technical Sch. Dist.*, 988 F. Supp.2d 105, 113 (D. Mass. 2013)(internal citations and citations to quoted cases omitted).

Annobil parrots the elements of wrongful termination claim—that is she asserts that she was terminated for doing what the law requires, for asserting her legal rights, *etc.* However, looking at the totality of her allegations and argument, it is clear that her claim for wrongful termination based on violation of public policy is entirely duplicative of all of her other claims—that is, she is alleging that she was fired in violation of the PDA, that she was coerced and threatened and intimated in violation of her civil rights, that her COBRA rights were violated and she was terminated for being pregnant. In other words, Annobil has asserted independent claims under state and federal laws that "create complex remedial schemes intended to enforce the public policies they embody. Because creation of a common-law cause of action would interfere with those schemes, the Court will not now create one." *Id.* Defendants are entitled so summary judgment on this claim.

<u>*Annobil's Claims For Violation Of COBRA (Docket No. XI)*</u>[14]

Annobil asserts that Senior Care failed to provide her with COBRA coverage rights as required.   In general, a terminated employee with employer-provided health insurance is entitled to COBRA coverage. 29 U.S.C. § 1161(a).[15]   More specifically, COBRA requires that an employer give an employees the opportunity to continue health his/her care coverage for a specified period of time after a "qualifying event," such as termination, at the expense of the employee. 29 U.S.C. §§ 1161(a), 1163(2). COBRA also requires the employer to notify health care plan administrators of an employee's termination within 30 days of the qualifying event. *Id.* § 1166(a)(2).   Plan administrators then have fourteen days to notify the qualified beneficiary of hi/her right to continued coverage. *Id.* § 1166(c).

Annobil asserts that Defendants violated COBRA because they failed to notify her of her right to continued coverage.   In support of her claim, she asserts that she did not receive information about her right to continued health coverage.   However, the undisputed facts are that on July 15, 2008, Zuffante notified the Cobra administrator, Cornerstone, of Annobil's termination. Furthermore, Defendants have provided evidence that Cornerstone prepared a full COBRA package with a letter indicating it was sent to Annobil's address on July 18, 2008. Therefore, Defendants are entitled to summary judgment on this claim.

---

[14]   In her opposition, Annobil argues that in addition to violating COBRA, Defendants violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1002(7),1132.   She seeks to assert a claim pursuant to ERISA §§502(a)(1)(B) and 502(a)(2); these provisions permit ERISA plan participants to file suit to hold fiduciaries personally liable for fiduciary breaches.   Given the circumstances of her case, the exact nature of Annobil's ERISA breach of fiduciary duty claim is not immediately apparent to the Court. But the Court need not attempt to decipher her claim: Annobil *has not* asserted an ERISA breach of fiduciary duty claim in her Amended Complaint and the Court is not going to entertain one raised for the first time in her memorandum.

[15]   There are exceptions, as for instance, when the employee is terminated for gross misconduct. 29 U.S.C. § 1163(2).   Defendants do not argue that Annobil was not entitled to COBRA benefits.

*Annobil's Claim For Intentional And Negligent Infliction Of Emotional Distress*

"Massachusetts law is clear that an employee's claims for emotional distress are barred by the exclusivity provisions of the Workmen's Compensation Act." *Hinchey v. NYNEX Corp.*, 979 F. Supp. 40, 45 (D.Mass. 1997). Accordingly, Defendants are entitled to summary judgment with respect to Annobil's emotional distress claims.

## **Conclusion**

1. Defendants' Patricia Kennedy's and Denise Zuffantes's Motion for Summary Judgment (Docket No. 68) is ***granted***; and

2. Defendants' Worcester Skilled Care Center, Inc.'s, Wingate Healthcare Inc's and Senior Residential Care/Worcester, Inc's Motion For Summary Judgment (Docket No. 69) is ***granted***.

Judgment shall enter for the Defendants.


**/s/ Timothy S. Hillman**
**TIMOTHY S. HILLMAN**
**UNITED STATES DISTRICT JUDGE**